IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE:

CASE # 20-11249-7

GLENNA P. NEWBY

    Debtor

DARCY D. WILLIAMSON, TRUSTEE
FOR THE BANKRUPTCY ESTATE OF
GLENNA P. NEWBY

    Plaintiff,                                    ADVERSARY #

vs.

SUNSHINE CONSULTATION SERVICES, LLC
D/B/A SPECIALIZED CONSUMER
STRATEGIES

    Defendant.

**COMPLAINT TO AVOID TRANSFER UNDER 11 U.S.C. § 548 AND
FOR TURNOVER AND RECOVERY OF MONEY
UNDER THE KANSAS CREDIT SERVICES ORGANIZATION ACT
AND THE KANSAS CONSUMER PROTECTION ACT**

COMES NOW the Chapter 7 Trustee and for her Complaint alleges and states as follows:

1. On October 10, 2020, the Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code.

2. Darcy D. Williamson was duly appointed Trustee and is the acting Trustee of the Debtor's Chapter 7 bankruptcy estate.

1

3. This court has jurisdiction over this complaint pursuant to 28 USC § 157 and §1334, as this is a proceeding which arises in the Chapter 7 proceedings of the Debtor. Venue is properly in this court pursuant to 28 USC § 1409.

4. This is a core proceeding.

### Defendants and jurisdiction

5. Defendant Sunshine Consultation Services, LLC is a Florida corporation registered to do business in Florida. Sunshine Consultation Services, LLC does business under the fictitious name of Specialized Consumer Strategies. Both entities are hereinafter referred to as "SCS" or "Defendant". SCS can be served by service on its registered agent, Spiegel & Utrera, P.A., 1840 SW 22nd St., 4th Floor, Miami, FL 33145 and by serving an agent, officer or director authorized to receive service of process at Sunshine Consultation Services LLC, d/b/a Specialized Consumer Strategies, 4300 W Lake Mary Blvd., 1010, Lake Mary, FL 32746.

6. Kansas law requires debt management service companies engaged in debt settlement to be licensed and registered in Kansas (K.S.A. 50-1118). At all times relevant herein, SCS was a credit service organization and provided debt settlement services to Glenna Newby. At all relevant times herein, SCS was not registered to do business in Kansas with the Secretary of State nor licensed with the Office of the Kansas Bank Commissioner to do business in Kansas.

7. Prior to filing bankruptcy and in August of 2020, the Debtor ("Debtor" or "Glenna Newby") was struggling financially. Specifically, her income consisted of social security (approximately $1,261.00 per month) and her debts exceeded $100,000.00. She could not pay her bills as they became due. When she filed bankruptcy on October 10, 2020, the Debtor listed assets on her bankruptcy schedules of $58,811.00 to include her home of $48,500.00 in value

and she listed debts of $100,993.00 to include a home mortgage of $58,632.00 and unsecured debt of $42,361.00. The Debtor listed income of $1,261.00 in social security earnings and living expenses of $2,057.32, leaving a deficit of $796.32.

8. The Debtor was at all times relevant herein a resident of Kansas. As a resident of Kansas and while in Kansas, the Debtor, in August of 2020, was contacted by the Defendant to inquire about and then to provide debt and financial relief and debt settlement services. On the date the Debtor was contacted by SCS in August, 2020 she was 71 years old, having been born in 1949. Glenna Newby also had some physical conditions limiting her ability to perform major life activities that an average person can perform. She is a protected consumer as defined under K.S.A. 50-676.

9. Glenna Newby was contacted by SCS to address her insolvency and financial issues. During Glenna Newby's phone consultation with SCS on August 13, 2020, the Trustee alleges upon information and belief that "SCS asked Ms. Newby if she wanted to save money". Ms. Newby tried to deny the services offered by SCS before they started, and she advised SCS that she could not afford the service or payments. In turn, SCS advised that 1) she was signed up already and 2) she could not file for bankruptcy or do anything for 14 months. A copy of SCS invoice and receipts are attached hereto and marked Exhibit B and made a part hereof. Glenna Newby was charged $1,550.00 (the "Transfer") for SCS services.

Following the phone consultation with SCS, the Debtor received a letter and Agreement from SCS on August 18, 2020 setting forth the perceived agreement. Both documents are hereinafter collectively called the "Contract".

3

Case 21-05006    Doc# 1    Filed 03/18/21    Page 3 of 15

The Contract appears to be a form document created and utilized by SCS. Glenna Newby entered into the Contract as it touted SCS's experience in financial restructuring matters and they held themselves out as experts. The Contract is attached hereto and made a part hereof and marked Exhibit A. Noteworthy provisions in Exhibit A represented and provided:

    a. In summary, Defendant SCS would charge the Debtor a one time payment of $1,550.00 by charging $790.00 to the Debtor's Capital One card and charging $760.00 to the Debtor's Citi card. The Contract provided in part:

> "Capital One 1191 has a balance of $2,413.63 @ 22.9%, plus fee of $790.00. We will transfer balance and fee to new Discover IT @ 0% for 14 months.
>
> Capital One 0758 has a balance of $1,513.65 @ 17.9%. We will transfer balance to new Discover IT @ 0% for 14 months.
>
> Citi has a balance of $7,635.84 @ 23.99%. We will place this into a balance payoff program on or around 09/25/2020. There may be issue (sic) beyond our control that may push back the dates. If anything changes at any time we will contact you to inform you and also send notice by email.
>
> PAYOFF PROGRAM: An internal program in which we will get your bank to Lower your rate by placing the account in a 48 to 60 month payoff program. We will call on your behalf and once in the program the account will be closed.
>
> You agree to allowing us to use your checking information that you have provided for the sole purpose of setting up an automatic payment for the accounts being enrolled into the payoff program would your creditors require it within your bank."

    b. In part, the Contract provided that the Defendant would develop and provide a budget custom tailored to Ms. Newby's situation and they would and did develop an action plan to "lessen the Debtor's financial burdens from creditors and to provide her a cost savings of, at an absolute minimum, $2,500.00 over the life of the debt enrolled".

4

Specifically:

"The Financial Coaching services you purchased is to educate you on your credit card accounts with having provided you with a plan of action, budget and consulting with you on options that fits your financial situation. Our goal is to help enlighten you in ways to continue to save money and elp strengthen your borrowing profile to help improve your debt to income ratio in order to ultimately reduce interest rates on existing loan commitments. If you have any questions or concerns please contact us at 855-326-7591."

"Congratulations on taking the first, big step toward improving your financial situation. SCS specializes in showing our clients the path to a better financial future. We have the expertise and knowledge to guide you into a future where you are not encumbered by so much debt, including credit cards. This service contract will outline your responsibilities, as well as ours, and is just a reiteration of what was discussed with you on the phone by your SCS team members."

"SCS Responsibilities:
* Develop and provide to you a budget custom tailored to your situation by information you supplied. Your SCS representative did this during your initial intake consultation, over the phone, on August 18, 2020. During the budget analysis, your SCS representative examined your recurring monthly expenses, including but not limited to, outstanding loan obligations, residential services, insurance and educational expenditures. By developing a budget for you, SCS was able to determine a course of action to help you improve your current financial situation. Your project manager identified factors affecting your borrowing profile, which included a debt to income ratio analysis.
* Formulate and discuss an "Action Plan". The Action Plan contains the steps needed to lessen your financial burdens from creditors. The Action Plan we provided you identified factors affecting your borrowing profile and provided you with corrective actions which could be taken to improve that profile. Our well trained Project Managers have spent many hours educating themselves and acquiring the knowledge and expertise needed to help you. Then, they passed on that knowledge to you as part of your fee.
* After creating a personalized budget and Action Plan, they ensure the client has been shown a cost savings of at an absolute minimum $2,500 over the life of debt enrolled. Typically that cost

5

savings is much higher, but if SCS cannot save at least the minimum amount, it would be financially irresponsible of us to charge you."

c. As a result of conferring with and entering an Agreement with SCS, Glenna Newby suffered actual damages to include but not limited to $1,550.00 in fees, mental and emotional anguish, stress and interest charges. Glenna Newby became stressed, confused and frustrated and felt that she was defrauded and given false information and was signed up for this program when she asked not to be. This incident is a trauma that continually upsets Ms. Newby to this date. In reality and at all relevant times, there was no point to the service rendered by SCS. Glenna Newby took on more credit card debt with new payments and a new credit card with attending payments. The Action Plan did not address debts and interest owed to other creditors. Ms. Newby had $1,261.00 in income to pay living expenses and to service over $100,000.00 in unsecured and secured debt that she already owed; her credit history would be diminished because of the new card and debt and late payments on other cards; and she was charged $1,550.00 to perform a simple function of transferring two credit card balances to a new credit card and for an Action Plan and budget that was ineffective. She was upset and stressed and sought the counsel of a bankruptcy attorney.

d. The Contract is an adhesion contract and under various Kansas provisions of Kansas law that govern this consumer transaction.

10. The Defendant's website provides as follows:

> SCS is a consulting firm that helps educate individuals on how to approach credit and debt. At SCS we work with our clients to help them create a stable budget and how to avoid problems like debt and bad credit as well as an overall review of clients debt and the

options available to help accomplish their short and long term
financial goals.

Debt consolidation is a form of debt refinancing that entails taking
out one loan to pay off many others. This commonly refers to a
personal finance process of individuals addressing high consumer
debt, but occasionally it can also refer to a country's fiscal
approach to consolidate corporate debt or Government debt. The
process can secure a lower overall interest rate to the entire debt
load and provide the convenience of servicing only one loan or
debt.

11. The Defendant held itself out to the public and to Glenna Newby that "SCS specializes in showing our clients the path to a better financial future. And that they have the expertise and knowledge to guide the consumer or Glenna Newby into a future where they are not encumbered by so much debt, including credit cards". SCS did not, nor did its action plan improve the Debtor's credit or financial circumstances, and create a sustainable plan for a 71 year old debtor living on $1,261.00 per month trying to service living expenses and $100,000.00 in debt she owed to creditors.

12. The Debtor is a consumer and a resident of the State of Kansas. On the date of filing, the Debtor was over 71 years of age, having been born in February of 1949.

13. SCS engaged in debt management services. SCS received a fee and deferred or sought to defer or reduce Glenna Newby's obligations to creditors. "Debt management service" is defined in the KS Statutes as:

(1) Receiving or offering to receive funds from a consumer for the purpose of distributing
the funds among such consumer's creditors in full or partial payment of such consumer's
debts;
(2) improving or offering to improve a consumer's credit record, history or rating;
or;
(3) negotiating or offering to negotiate to defer or reduce a consumer's
obligations with respect to credit extended by others.

7

The Defendant is a credit service organizations and engages in and holds itself out to the public as willing to engage in the business of debt management services for a fee, or expectation of a fee or compensation or a gain. The Defendant is a debt management company and offered and did engage in debt management services with Glenna Newby, the Debtor, as defined under K.S.A. 50-1117 and 50-1118.

Specifically, under K.S.A. 50-1117 Glenna Newby is a "Consumer" as she is an individual and resident of Kansas. SCS is a Credit Services Organization as it held itself out as willing to engage in the business of debt management for Glenna Newby for a fee or in expectation of a fee. SCS provided Debt Management Services to Glenna Newby to include but not limited to the establishment of a personalized budget and Action Plan to assist Glenna Newby to a better financial future and payment of some of her creditors. SCS charged her a fee of $1,550.00 by placing that sum on two credit cards. The existing balance on those two credit cards were also placed on a new card that had to be paid in periodic payments. SCS also placed or was to place a Citi card into a reduced balance payoff program to last for 48 to 60 months, etc.

14. The Debtor ceased her participation in the Defendant's Action Program. The Debtor filed this Chapter 7 bankruptcy on October 7, 2020 and was insolvent and is presumed insolvent more than 90 days before filing bankruptcy. Glenna Newby was unable to meet her monthly obligations. Specifically, Glenna Newby listed assets on her bankruptcy schedules of $58,811.00 to include her home of $48,500.00 in value and listed debts of $100,993.00 to include a home mortgage of $58,632.00 and unsecured debt of $42,361.00. The Debtor listed income of $1,261.00 in social security earnings and living expenses of $2,057.32, leaving a deficit of $796.32.

15. The Debtor could not pay her bills, nor her everyday living expenses. The causes of action listed herein are property of the bankruptcy estate per 11 U.S.C. § 541 and any proceeds are sought for the benefit of the estate.

### COUNT 1

**Trustee's 11 USC § 548 and § 542 Claim Against the Defendant for Avoidance of Fraudulent Transfer and for an Accounting.**

16. The Trustee repeats and alleges the allegations of the paragraphs 1 through 15 of this Complaint as if fully set forth herein.

17. The Debtor transferred or caused to be transferred at least $1,550.00 ("Transfer") to the Defendant SCS in the three months before her bankruptcy.

18. The Debtor did not receive a reasonably equivalent value from SCS in exchange for the Transfer. The Debtor was insolvent at the time of the Transfer or was made or became insolvent because of the Transfer; and at the time of the Transfer there was no reasonable likelihood that SCS's services would help her. In fact, Ms. Newby was left in a worse financial position than when she commenced using SCS's services.

19. The Transfer is avoidable under 11 USC § 548 and is recoverable and preserved for the benefit of the estate under 11 USC § 550. Pursuant to 11 USC § 542, the Trustee is entitled to an accounting of property transferred from the Debtor to the Defendant and turnover of those funds.

20. The Trustee has incurred fees, costs and expenses in prosecuting this action, and is entitled to the same. The Trustee is entitled to prejudgment interest from the date of the Trustee's demand, which was February 2, 2021.

WHEREFORE, the Trustee prays that the court enter an order avoiding the Transfer per 11 U.S.C. § 548 and for an order requiring the Defendant to provide an accounting of all funds transferred by Glenna Newby to the Defendant; for an order requiring the Defendant to turn over unto the Trustee Plaintiff any funds transferred by Glenna Newby to the Defendant, for costs and attorney's fees and prejudgment and post judgment interest and for all other such relief as the court deems just and equitable.

## COUNT 2

### Violation of Credit Services Organization Act

21. The Trustee repeats and alleges the allegations of paragraphs 1 through 20 of this Complaint as if fully set forth herein.

22. SCS knew that Glenna Newby was a Kansas resident when she contacted SCS in August, 2020 as she provided SCS her name and address.

23. SCS is subject to the Credit Services Organization Act as they provided debt management services unto Ms. Newby as defined by K.S.A. 50-1117 and in violation of K.S.A. 50-1117, 50-1118, 50-1119, 50-1120 and 50-1122.

24. Without proper authorization and in violation of Kansas law, SCS provided debt management services to a Kansas resident, Glenna Newby in Kansas.

25. SCS as The Defendant failed to:

    a. Provide the Debtor with a credit education program, and obtain a license and bond in the State of Kansas to perform these services.

    b. Identify all of Ms. Newby's creditors and debt obligations and provide a disclosure to the Debtor as to which creditors would participate in the program.

10

c. Provide the Debtor with a description of the debt management services to be provided and an itemization of any fees to be charged to the Debtor.

d. Provide a notice of the Debtor's right to rescind the Agreement at any time by giving written notice.

e. Provide a schedule of payments, including an amount and due date of each payment, the Debtor must make.

f. Provide a disclosure that SCS as the debt management company also may receive compensation from the Debtor's creditors for providing debt management services.

g. Provide a disclosure that a debt management company may not, as a condition of entering into a debt management services agreement, require the Debtor to purchase any other product or service, nor solicit or offer to sell any other product or service to the Debtor during the term of the debt management services agreement.

h. Provide a disclosure that the debt management company may not require a voluntary contribution from the Debtor for any service provided.

i. Provide a disclosure that, by executing the debt management services agreement, the consumer authorized any financial institution in which the registrant has established a trust account for the deposit of the consumer's funds to disclose to the commissioner any financial records relating to the trust account during the course of any investigation or examination by the commissioner.

11

j. Provide a notice substantially similar to the following: "The Kansas Office of the State Bank Commissioner accepts questions and complaints from consumers regarding (name and license number of licensee) at 700 SW Jackson, Suite 300, Topeka, Kansas, 66603, or by calling toll-free 1-877-387-8523."

k. Provide that copies of all solicitations and published advertisements concerning a credit services organization directed at Kansas residents, including those on the internet or by other electronic means, shall contain the name and license number of the licensee on record with the commissioner. Each licensee shall maintain a record of all solicitations or advertisements for a period of 36 months. For purposes of this subsection, "advertising" does not include business cards or promotional items.

26. Pursuant to 50-1133, the Plaintiff seeks damages for any sum paid to SCS, including punitive damages and reasonable attorney fees and costs. Glenna Newby paid the Defendant SCS the sum of $1,550.00, incurred new credit cards, which would negatively impact her credit history and as a 71 year old consumer was generally taken advantage of and was left upset and traumatized by SCS for services that would not help her.

27. Pursuant to 50-1132, any violation under the Credit Services Organization Act is a deceptive act or practice under the Kansas Consumer Protection Act. And any remedy provided under the Credit Services Organization Act shall be construed to be in addition to other remedies provided by the Kansas Consumer Protection Act.

WHEREFORE, the Trustee prays that the court enter an order requiring the Defendant to provide an accounting of all funds transferred by the Debtor to the Defendant; for an order

requiring the Defendant to turn over any funds transferred by the Debtor to the Defendant; for an order finding the Defendant SCS violated the Credit Services Organization Act numerous times as set forth above or; for $1,550.00 in damages, for punitive damages, for costs and attorney's fees and prejudgment and post judgment interest and for all other such relief as the court deems just and equitable.

## COUNT 3
### Trustee's Claim Against Defendant for Violation of Kansas Consumer Protection Act

28. The Trustee repeats and alleges the allegations of the paragraphs 1 through 27 of this Complaint as if fully set forth herein.

29. Defendant is not authorized to engage in debt management services in the State of Kansas as required by and in violation of K.S.A. 50-1118, 50-1119, 50-1120 and 50-1121.

30. The services for which the Debtor contracted with the Defendant were a "consumer transaction" as defined by K.S.A. 50-624; the Defendant was a "supplier" as that term is used in the Kansas Consumer Protection Act (K.S.A. 50-624) and the Debtor was a "consumer" as that term is used and defined in the Kansas Consumer Protection Act (K.S.A. 50-624).

31. The Defendant or its agent engaged with the Debtor, a Kansas consumer, in Kansas in a consumer transactions as set forth above in the Complaint.

32. Each violation of the Credit Services Organization Act by SCS as set forth in Count 2 herein by the Defendant SCS constitutes a deceptive act in violation of the Kansas Consumer Protection Act, K.S.A. 50-623 et. Seq. The Kansas Consumer Protection Act provides for a $10,000.00 civil penalty for each violation plus attorney fees and costs. If the Debtor is over 65, the civil penalty may be enhanced from $10,000.00 by another $10,000.00 ($20,000.00 total) per

violation, pursuant to K.S.A. 50-677.  This Debtor is over the age of 65, and an enhanced civil penalty totaling $20,000.00 per violation is appropriate.  Specifically, SCS's conduct includes, but is not limited to, a disregard of the rights and wishes of Glenna Newby.  The Defendant knew or should have known their conduct was directed to a protected consumer; their services were of no benefit to Glenna Newby; that Glenna Newby was an elder person; and that she suffered mental anguish and economic damage as a result of SCS's conduct.

33.   The Defendant also entered into a Contract with the Debtor without disclosing that they had an obligation to register as a "debt management service" and had not done so.  These nondisclosures and other failures outlined above, constitute deceptive and unconscionable acts and practices and are prohibited by the Kansas Consumer Protection Act.

34.   As Trustee of the Debtor's bankruptcy estate, the Trustee is entitled to recover damages, attorney fees or penalties caused by the Defendant's pre-petition deceptive and unconscionable acts toward the Debtor.

WHEREFORE, the Trustee prays for judgment against the Defendant in amount exceeding $75,000.00 for all violations under all counts herein , and for the Debtor's economic damages and penalties of up to $10,000.00 for each violation of the Kansas Consumer Protection Act and Credit Services Organization Act, for costs, for attorney fees, punitive damages and enhancement of damages and penalties of up to another $10,000.00 for each violation of the Kansas Consumer Protection Act and Credit Services Organization Act under K.S.A. 50-676 and 50-677 and for other such relief the Court deems just and equitable.

Respectfully Submitted:

s/ Darcy D. Williamson
DARCY D. WILLIAMSON, Trustee
Attorney # 11337
1109 SW Westside Drive
Topeka  KS  66615
(785) 233-9908
trustee@williamson-law.net


# CERTIFICATE OF SERVICE

      The undersigned does hereby certify that a true and correct copy of the foregoing **COMPLAINT TO AVOID TRANSFER UNDER 11 U.S.C. § 548 AND FOR TURNOVER AND RECOVERY OF MONEY UNDER THE KANSAS CREDIT SERVICES ORGANIZATION ACT AND THE KANSAS CONSUMER PROTECTION ACT** was filed electronically on March 17, 2021, with the United States Bankruptcy Court for the District of Kansas, and shall be served on parties in interest via e-mail by the Court pursuant to CM/ECF as set out on the Notice of Electronic Filing as issued by the Court and shall be served by U.S. Mail, First Class, postage prepaid, on those parties listed below, and on those parties directed by the Court on the Notice of Electronic Filing issued by the Court and as required by the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the District of Kansas.

s/ Darcy D. Williamson
DARCY D. WILLIAMSON, Trustee
Attorney # 11337
1109 SW Westside Drive
Topeka  KS  66615
(785) 233-9908
trustee@williamson-law.net